UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY PHYSICIANS, INC., MARIO A. CRISCITO, M.D., and PATIENT ROE,<br><br>Plaintiffs,<br><br>v.<br><br>BARACK H. OBAMA, President Of the United States, in his official capacity; THE HON. TIMOTHY GEITHNER, Secretary of the Treasury of the United States, in his official capacity; THE HON. ERIC HOLDER, Attorney General of the United States, in his official capacity; and THE HON. KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, in her official capacity,<br><br>Defendants. | Civil Action No. 10-1489 (SDW) (MCA)<br><br>**OPINION**<br><br>December 7, 2010 |

**WIGENTON**, District Judge.

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court has jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2202. Venue is proper pursuant to 28 U.S.C. § 1391. The Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court grants Defendants' Motion to Dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit—one of many filed throughout the country—raises a Constitutional challenge to the recently enacted federal healthcare reform law, known as the "Patient Protection and Affordable Care Act ("Act"), Pub. L. No. 111-148, 124 Stat. 119 (2010), amended by Health

1

Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010). The Act was signed into law by Defendant President Barack Obama on March 23, 2010. Plaintiffs New Jersey Physicians, Inc., ("NJP"), Mario A. Criscito, M.D., ("Dr. Criscito"), and Patient Roe ("Roe") (collectively "Plaintiffs"), seek a declaration that the Act is not a valid exercise of Congress's power under the Commerce Clause or any of the federal government's enumerated powers. (Pls.' Compl. ¶¶ 1-3, 17, 22.)  Additionally, Plaintiffs allege that the Act violates their Fifth Amendment rights.  (Id. at ¶ 20.)  NJP is a non-profit New Jersey corporation which "advocates for its physician members and their patients."  (Pls.' Compl. ¶ 1.)  Its "primary purpose [is] the protection and advancement of patient access to affordable, quality healthcare." (Id.)  Dr. Criscito, a cardiologist, is a member of NJP, (Id. at ¶ 2), and Roe is Dr. Criscito's uninsured patient.  (Id. at ¶ 3.)

According to Congress's finding, "[n]ational health spending is projected to increase from $2,500,000,000,000, or 17.6 percent of the economy, in 2009 to $4,700,000,000 in 2019." §§ 1501(a)(2)(B), 10106(a); see also Douglas W. Elmendorf, Director, Cong. Budget Office ("CBO"),  Economic Effects of the March Health Legislation, 5 (Oct. 22, 2010) ("[t]otal spending on healthcare now accounts for about 15 percent of [the] GDP, and  CBO projects that it will represent more than 25 percent by 2035.").  Additionally, Congress found that sixty-two percent "of all personal bankruptcies are caused in part by medical expenses."  §§ 1501(a)(2)(G), 10106(a).  Consequently, the purpose of the Act is to provide affordable health insurance, and to reduce the number of uninsured Americans "and the escalating costs they impose on the healthcare system." Thomas More Law Ctr. v. Obama, 2010 U.S. Dist. LEXIS 107416, at *2 (E.D. Mich. Oct. 7, 2010).

As part of the effort to provide affordable health insurance and lower the number of uninsured Americans, § 10106(a), the Act contains a "minimum essential coverage" provision, which states: "[a]n applicable individual shall for each month beginning after 2013 ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month." § 1501.[1] Congress included this mandatory minimum coverage because it found that "if there were no [such] requirement, many individuals would wait to purchase health insurance until they needed care," and would therefore undermine the purpose behind the Act. §§ 1501(a)(2)(G), 10106(a). Furthermore, Congress found that the "minimum essential coverage" requirement, in addition to the Act's other provisions, would lower the cost of health insurance by reducing "adverse selection and broaden[ing] the health insurance risk pool to include healthy individuals." Id. Congress also determined that the minimum essential coverage provision "is essential to creating effective health insurance markets in which improved health insurance products that are guaranteed issue and do not exclude coverage of pre-existing conditions can be sold." Id. It has been projected that by 2019 thirty-two million "fewer people will be uninsured because of the legislation." Douglas W. Elmendorf, Director, Cong. Budget Office ("CBO"), Economic Effects of the March Health Legislation, 6 (Oct. 22, 2010).

## MOTION TO DISMISS STANDARD

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, an adequate complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

---

[1] This provision does not apply to all citizens as there are some stated exceptions. See §1501 (adding 26 U.S.C. § 5000A(d)(1)-(4)).

enough to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief.").

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). If reviewing a "'facial attack,' which is based on the legal sufficiency of the claim, the Court 'must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff.'" Brown v. U.S. Steel Corp., 2010 U.S. Dist. LEXIS 115503, at *5 (W.D. Pa. Oct. 29, 2010) (quoting Gould Elecs. Inc., 220 F.3d at 176); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). On the other hand, if the Court is considering a "'factual attack,' where a challenge is based on the sufficiency of jurisdictional fact, 'the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case.'" Brown, 2010 U.S. Dist. LEXIS 115503, at *6 (quoting Carpet Grp. Int'l v. Oriental Rug Imps., 227 F.3d 62, 69 (3d Cir. 2000)). Additionally, in a "factual attack" the reviewing court "accords plaintiff's allegations no presumption of truth," Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002); see also Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999), and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

However, in considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to

4

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holding Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556–57) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "'show[] that the pleader is entitled to relief'" as required by Rule 8(a)(2). Id.

## DISCUSSION

I. **Standing**

Pursuant to Article III of the United States Constitution, the Court may exercise jurisdiction only where there is an actual case or controversy. Golden v. Zwickler, 394 U.S. 103,

108 (1969). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing is a "threshold question," id., and "[t]he party invoking federal jurisdiction bears the burden" of proof. Lujan, 504 U.S. at 561. To meet this burden, "the irreducible constitutional minimum of standing," involving three elements must be established. Id. at 560.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560-61 (internal quotations and citations omitted).

Although all three elements have to be met, "the injury-in-fact element is often determinative." Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009). In order to be sufficiently particularized, "the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 561 n.1. While the harm may be shared by many, it must be "concrete enough to distinguish the interest of the plaintiff from the generalized and undifferentiated interest every citizen has in good government." Toll Bros., Inc., 555 F.3d at 138. Furthermore, the plaintiff must "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. UFW Nat'l Union, 442 U.S. 289, 298 (1979). However, the plaintiff "'does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly pending that is enough.'"

6

Id. (emphasis added) (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923)); see also Ry. Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945) (fundamental question is whether "[t]he conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.") (emphasis added); Pierce v. Soc'y of Sisters, 268 U.S. 510, 536 (concluding that plaintiffs had standing because the injury "was present and very real, not a mere possibility in the remote future.") (emphasis added).

a. Patient Roe

Roe alleges that he has standing to challenge the Act because he does not have qualifying insurance presently and he does not plan to purchase insurance in the future. (Pls.' Br. 6.) In order to have standing, Plaintiff's injury must be "present and very real, not a mere possibility in the remote future." Pierce, 268 U.S. at 536. Additionally, the harm cannot be "hypothetical or abstract." Railway Mail Ass'n, 326 U.S. at 93. However, Roe's argument fails to account for the fact that even if he does not purchase qualifying insurance, there is a possibility that he may not have to pay a penalty when the Act takes effect in 2014 because he may obtain insurance through his employer. The complaint does not allege that Roe will be unemployable in 2014 or will not be able to secure insurance with his employer in 2014. Also, even if Plaintiff does not obtain insurance, he "may have insufficient income in 2014 to become liable for any penalty." Thomas More Law Ctr., 2010 U.S. Dist. LEXIS 107416, at *8. Therefore, there is a real possibility that Roe will neither have to pay for insurance nor be subject to the penalty. Hence, his claims are conjectural and speculative, at best. Consequently, Roe does not have standing to challenge the Act because the Supreme Court has repeatedly held that "[a]llegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly

impending' to constitute injury in fact." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (quoting Babbitt, 442 U.S. at 298). Plaintiffs have failed to show that Roe will certainly have to purchase insurance or that he will be subject to the penalty. Accordingly, the "threatened injury" is not "certainly impending." Whitmore, 495 U.S. at 158. See Baldwin v. Sebelius, 2010 U.S. Dist. LEXIS 89192, at *9 (S.D. Cal. Aug. 27, 2010) (finding that the plaintiff who was challenging the Act did not have standing because even if he did not presently have insurance, "he may well satisfy the minimum coverage provision of the Act by 2014: he may take a job that offers health insurance, or qualify for Medicaid or Medicare . . . before the effective date of the Act."); see also Babbitt, 442 U.S. at 304 (finding no standing because it was "conjectural to anticipate that access [to the employers' property] will be denied."); Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985) (internal quotation omitted) (concluding the plaintiff did not have standing because its claim concerned "contingent future events that may not occur as anticipated, or indeed may not occur at all.").

However, Plaintiffs allege that Roe has standing because the Act takes effect in 2014. (Pls.' Br. 6.) This argument lacks merit. The fact that the Act is certain to take effect alone does not give Roe standing. While it is true that the Act becomes effective in 2014, it is speculative, for the reasons stated earlier: Roe will have to purchase insurance or pay the resulting penalty for failure to obtain same. Therefore, Roe's alleged injuries are purely hypothetical. Furthermore, "[a]llegations of future injury will satisfy the [standing] requirement only if [the plaintiff] is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." Baldwin, 2010 U.S. Dist. LEXIS 89192, at *7 (emphasis added) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (internal quotations omitted). Here, aside from alleging that he will have to pay the penalty in 2014, Roe has not alleged that he is suffering any

immediate injury. For example, unlike the plaintiff in Thomas More Law Ctr., 2010 U.S. Dist. LEXIS 107416, at *7, 10, Roe has not alleged that he has "arranged [] [his] personal affairs such that it will be a hardship for [] [him] to either pay for health insurance . . . or face penalties under the Act." Also, Roe does not argue that the Act imposes financial pressure or that he has to forego spending money in order to pay for the insurance. Id. at 12. Hence, Plaintiff has not alleged any immediate direct injury. Likewise, claims of future injury are insufficient to provide standing "where the acts necessary to make the injury happen are at least partly within the plaintiff's own control." Id. at 9 (quoting Lujan, 504 U.S. at 564 n.2) (internal quotations omitted).

Nonetheless, Plaintiffs argue that Roe has standing because "Courts repeatedly have found standing to pursue pre-enforcement Constitutional challenges where the alleged harm will occur in the future." (Pls.' Br. 5.) However, Plaintiffs' reliance on the cases they cite is misplaced. In Massachusetts v. EPA, 549 U.S. 497, 505, 510 (2007), nineteen private organizations, seven states—one being Massachusetts—and a group of local governments, petitioned the EPA to begin regulating the emission of four greenhouse gases. The EPA declined. Id. at 511. The Supreme Court noted that Massachusetts, a sovereign State, had a "special position and interest" because "Congress ha[d] ordered the EPA to protect Massachusetts (among others) by prescribing standards applicable to the 'emission of any air pollutant . . . .'" Id. at 518, 519. Given "Massachusetts's stake in protecting its quasi-sovereign interests," id. at 520, the Court found that it had standing to challenge the EPA's decision. Id. at 521. In making that determination, the Court gave great weight to the fact that Massachusetts was a "sovereign State and not, . . . a private [entity or] individual. Id. at 518. Additionally, the

9

Court noted that "[t]he harms associated with climate change are serious and well recognized." Id. at 521.

Massachusetts is distinguishable from this case on two grounds: First, the Court specifically noted that Massachusetts was not a "normal litigant[] for the purpose of invoking federal jurisdiction" because it is a sovereign State. Id. at 518. Here, none of the Plaintiffs are States. Moreover, in Massachusetts, although the injury would occur in the future, it was certain to come based on years of research and studies; thus, it was not the product of speculation or conjecture. On the other hand, Roe's alleged injuries are purely speculative for the reasons already stated.

Similarly, Pierce does not support Plaintiffs' claim for standing. In Pierce, Oregon enacted a statute which required all children between the ages of eight and sixteen years to attend public school. Pierce, 268 U.S. at 530. Failure to do so was a misdemeanor. Id. The Court found that there was standing because "the injury to the appellees was present and very real, not a mere possibility in the remote future." Id. at 536 (emphasis added). However, as stated earlier, Roe's alleged injury is only a mere possibility because he has not sufficiently shown that he will be required to purchase insurance or pay the penalty. Also, in Pierce, failure to comply with the statute resulted in a misdemeanor, giving the plaintiff's claim for standing more credence because the threat of criminal penalties is sufficient for standing in a pre-enforcement challenge to the statute. Holder v. Humanitarian Law Project, 130 S.Ct. 2705, 2717 (2010) (holding that "[p]laintiffs face a 'credible threat of prosecution' and 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'"); see also Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 392 (1988) (risk of criminal prosecution confers

standing); N.C. Right to Life, Inc. v. Leake, 525 F.3d 274, 280 n. 2 (4th Cir. 2008) ("when a plaintiff faces credible threat of prosecution under a criminal statute he[/she] has standing to mount a pre-enforcement challenge to that statute.") (internal quotations omitted). Unlike Pierce, the Act specifically states that failure to procure insurance does not result in a criminal penalty. § 1501 (adding 26 U.S.C. § 5000A(g)(2)(A)).

Likewise, Dep't of Commerce v. U.S. House of Reps., 525 U.S. 316 (1999), does not support Plaintiffs' argument. In that case, four counties, the residents of thirteen states—one being Indiana— and the United States House of Representatives (collectively "appellees") challenged the Census Bureau's (the "Bureau") plan to use two new forms of statistical sampling in the 2000 census. Id. at 320, 327-28. The appellees submitted an affidavit showing that under the Bureau's proposed plan for the 2000 census, "it was a virtual certainty that Indiana will lose a seat" in the House. Id. at 330 (emphasis added) (internal quotations omitted). Consequently, the Court found that the appellees had standing to bring this suit. Id. at 331. Nonetheless, Dep't of Commerce is distinguishable from the case at hand because it is not a virtual certainty that Roe will be uninsured or that he will have to pay the penalty.

Furthermore, Plaintiffs' reliance on Bensenville v. FAA, 376 F.3d 1114 (D.C. Cir. 2004) is misplaced. In Bensenville, Chicago sought and received the approval of the FAA to impose a $4.50 facility charge on O'Hare International Airport passengers. Id. at 1115. Three Chicago suburbs ('the municipalities") sought review of the FAA's decision. Id. at 1115-16. The Court found that although the FAA would not collect the fees for another thirteen years, the municipalities had standing to challenge the FAA's decision because Chicago would start collecting the fee in 2017, "absent action" from the Court. Id. at 1119. Thus, like in Dep't of Commerce, injury to the municipalities was a virtual certainty. Bensenville differs from the case

at hand because the municipalities could not be exempted from the facility charge.  On the other hand, Roe's personal situation might change by 2014 and he may either qualify for insurance or he may not have to pay the penalty.  Therefore, unlike Bensenville, Roe's injuries are speculative and conjectural.

Additionally, cases where other courts have found that the plaintiffs had standing to challenge the Act are distinguishable.  For instance, in Florida v. U.S. Dep't of Health and Human Servs., 2010 U.S. Dist. LEXIS 111775, at *4-5 (N.D. Fla. Oct. 14, 2010), sixteen state Attorney Generals, four state Governors (the "state plaintiffs"), two private citizens, and the National Federation of Independent Business ("NFIB") (collectively "the plaintiffs") brought a constitutional challenge against the Act.  The Court concluded that the plaintiffs had standing because the private citizens, who are members of NFIB, alleged that "they were being forced to comply with [the Act and] . . . it will force [them] (and other NFIB members) to divert resources from their business endeavors and reorder their economic circumstances to obtain qualifying coverage."  Id. at 58.  Unlike here, the plaintiffs alleged a present injury—being forced to reorder their economic affairs.  Furthermore, in that case, there were sixteen states involved and as stated earlier, the Supreme Court has recognized that states are usually given "special solicitude" in the standing analysis due to their need to protect their sovereign interests.  Massachusetts, 549 U.S. at 520.  Hence, that case is also distinguishable on the basis that some of the Plaintiffs were States.

Moreover, in Commonwealth ex rel. Cuccinelli v. Sebelius, 702 F. Supp. 2d 598, 601 (E.D. Va. 2010), the Commonwealth of Virginia challenged the Act's "minimum essential coverage" provision based on its "core sovereign power because the effect of the federal enactment is to require Virginia to yield under the Supremacy Clause."  Id. at 603.  Virginia

alleged that its "officials are presently having to deviate from their ordinary duties to begin the administrative response to the changes in federal law as they cascade through the Medicaid and insurance regulatory systems." Id. (internal quotations omitted). In concluding that Virginia had standing to challenge the Act, the Court noted that "[w]hile standing jurisprudence in the area of quasi-sovereign or *parens patriae* standing defies simple formulation, courts have uniformly held that 'where a harm is widely shared, a sovereign, suing in its individual interest, has standing to sue where that sovereign's individual interests are harmed, wholly apart from the alleged general harm.'" Id. at 606 (quoting Ctr. for Biological Diversity v. U.S. Dep't of Interior, 563 F.3d 466, 476-77 (D.C. Cir. 2009)). Consequently, Commonwealth ex rel. Cuccinelli is distinguishable because a state was a plaintiff and it alleged a present injury—preparing administrative responses to ensure that it is in compliance with the Act. In the matter before this Court, a state is not a plaintiff and Roe has failed to allege a present injury.

Also, in Thomas More Law Ctr., the Court found that the plaintiffs had standing to challenge the Act because the plaintiffs specifically alleged that they were "being compelled to 'reorganize their affairs'" and that the need to purchase insurance was causing them to "feel economic pressure today." Thomas More Law Ctr., 2010 U.S. Dist. LEXIS 107416, at *9, 11. Roe does not make a similar allegation. Roe's position is akin to that of the individual plaintiff in Baldwin, 2010 U.S. Dist. LEXIS 89192, at *9, a case where the Court found the plaintiffs had no standing to challenge the Act, because as that Court properly stated "he may well satisfy the mini[m]um coverage provision of the Act by 2014: he may take a job that offers health insurance, or qualify for Medicaid or Medicare, or he may choose to purchase health insurance before the effective date of the Act."

b. <u>Dr. Criscito</u>

Plaintiffs allege that Dr. Criscito has standing because the Act will affect "the manner in which he may, or may not seek payment for his professional services and the manner in which he may render treatment to his patients." (Pls.' Br. 3.) According to Plaintiffs, Dr. Criscito will be unable to accept direct payments from his patients once the Act is effective. (<u>Id.</u> at 6.) However, this argument has no basis. The Act does not prohibit Dr. Criscito or any physician from accepting direct payments from their patients. Moreover, even if Dr. Criscito's patients do not pay him directly, that will suggest that they have obtained insurance. Hence, he will still be paid for his services. Additionally, the Act does not specify how physicians should render treatment to their patients. Moreover, while the complaint alleges that the Act "places new regulatory and tax burdens on . . . small employers like Dr. Criscito and Roe," (Pls.' Compl. ¶35), it fails to mention how many employees Dr. Criscito and Roe have. The employer responsibility provision only applies to employers with at least fifty full-time employees. §1513(a) (adding 26 U.S.C. § 4980H(d)(2)(A)). Therefore, Plaintiffs' failure to allege that Dr. Criscito and Roe have, or will have, fifty employees in 2014 seriously undercuts their standing argument. <u>See</u> <u>Baldwin</u>, 2010 U.S. Dist. LEXIS 89192, at *9. Also, Plaintiffs do not allege whether they currently provide insurance to their employees. If they do, there is also the possibility that the coverage they presently provide to their employees will satisfy the Act's requirements. <u>Id.</u>

c. <u>NJP</u>

An association may have standing to bring a suit under two circumstances. <u>Pa. Prison Soc'y v. Cortes</u>, 508 F.3d 156, 162 (3d Cir. 2007). First, an association may have "standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." <u>Warth</u>, 422 U.S. at 511; <u>see also</u> <u>Addiction</u>

Specialist, Inc. v. Twp. of Hampton, 411 F.3d 399, 406-07 (3d Cir. 2005).  On the other hand, an association "may assert claims on behalf of its members, but only where the record shows that the organization's individual members themselves have standing to bring those claims."  Pa Prison Soc'y, 508 F.3d at 163.  Here, NJP is asserting standing on the second ground and it has standing only if its individual members do.  Dr. Criscito is the only NJP member mentioned in the complaint.  However, as discussed earlier, Dr. Criscito does not have standing to challenge the Act.  Consequently, NJP cannot proceed.[2]

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.

---

[2] Because the Court finds that Plaintiffs have no standing to challenge the Act, it declines to address the issue of whether Plaintiffs' claims are barred by the Anti-Injunction Clause, 26 U.S.C. § 7421(a).